UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD JEFFERY USHER,

       Petitioner,

                                      CASE NO. 05-CV-40246-FL
v.                             JUDGE PAUL V. GADOLA
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

LINDA M. METRISH,

       Respondent.[1]
                           /

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION ........................................................... 2
II.    REPORT ....................................................................... 2
     A.    *Procedural History* .................................................... 2
     B.    *Factual Background Underlying Petitioner's Conviction* ................. 4
     C.    *Standard of Review* .................................................... 5
     D.    *Identification Claim (Claim I)* ........................................ 8
          1.    *Clearly Established Law* ....................................... 8
          2.    *Analysis* ..................................................... 9
     E.    *Sentencing Claims (Claims II-IV)* ..................................... 11
          1.    *Guidelines Scoring/Jail Credit* ................................ 11
          2.    *Proportionality* ............................................... 12
                a. Clearly Established Law ................................... 12
                b. Analysis ................................................. 15
     F.    *Conclusion* .......................................................... 17
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 17

---

[1]By Order entered this date, Linda M. Metrish has been substituted in place of Kenneth Romanowski as the proper respondent in this action.

I.   RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.   *Procedural History*

1.   Petitioner Harold Jeffrey Usher is a state prisoner, currently confined at the Kinross Correctional Facility in Kincheloe, Michigan.

2.   On April 11, 2002, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; and felonious assault, MICH. COMP. LAWS § 750.82, following a jury trial in the Oakland County Circuit Court. On May 6, 2002, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to a term of 25-40 years' imprisonment on the armed robbery conviction, a term of 25-40 years' imprisonment on the assault with intent to rob conviction, and a term of 5-15 years' imprisonment on the felonious assault conviction.

3.   Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

   I.   THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE DEFENSE PRE-TRIAL MOTION TO SUPPRESS IDENTIFICATION TESTIMONY.

   II.   THE TRIAL COURT REVERSIBLY ERRED IN OVERRULING THE DEFENSE OBJECTION TO THE SCORING OF 50 POINTS ON OV-7 AND TO THE SCORING OF 10 POINTS ON OV-14.

   III.   THE TRIAL COURT VIOLATED THE U.S. AND MICHIGAN CONSTITUTIONS IN SENTENCING THE DEFENDANT TO A PRISON TERM OF 25-40 YEARS ON THE HABITUAL OFFENDER 4th SUPPLEMENT ARISING OUT OF THE ARMED ROBBERY CONVICTION, TO A PRISON TERM OF 25-40 YEARS ON THE HABITUAL OFFENDER 4th SUPPLEMENT ARISING OUT OF THE

> ASSAULT WITH INTENT TO ROB WHILE ARMED CONVICTION, AND TO A PRISON TERM OF 5-15 YEARS ON THE HABITUAL OFFENDER 4th SUPPLEMENT ARISING OUT OF THE FELONIOUS ASSAULT CONVICTION.
>
> IV. THE TRIAL COURT REVERSIBLY ERRED IN AWARDING THE DEFENDANT 462, RATHER THAN 472, DAYS OF JAIL CREDIT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Usher*, No. 242233, 2003 WL 23018262 (Mich. Ct. App. Dec. 23, 2003) (per curiam).[2]

    4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court, as well as two additional claims: (1) lack of arraignment; and (2) ineffective assistance of appellate counsel for failure to raise the arraignment claim on direct appeal. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Usher*, 471 Mich. 883, 688 N.W.2d 506 (2004). The Supreme Court subsequently denied petitioner's motion for reconsideration. *See People v. Usher*, 471 Mich. 956, 690 N.W.2d 117 (2004).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 8, 2005. As grounds for the writ of habeas corpus, he raises the four claims raised by counsel on direct appeal to the Michigan Court of Appeals.

    6.    Respondent filed his answer on February 8, 2006. He contends that petitioner's claims are either without merit or not cognizable on habeas review.

    7.    Petitioner filed a reply to respondent's answer on February 24, 2006.

---

    [2]Petitioner also filed a *pro se* supplemental brief, raising a claim that his conviction must be reversed because he was never arraigned. This claim was not considered by the Michigan Court of Appeals in its decision, and does not form the basis of any claim in petitioner's habeas application.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the January 20, 2001, robbery of the Kroger grocery store located at Maple and Lahser Roads, in Bloomfield Township.  The prosecution witnesses, who primarily consisted of store employees, gave detailed testimony concerning the robbery.  The primary issue at trial was identity, and the principal challenge to petitioner's conviction on direct appeal and in this habeas action was based on the pre-trial identification of petitioner by two store employees, Douglas Culbreath and Don Rudick.  The circumstances of the robbery and of the witnesses' identifications were summarized by the Michigan Court of Appeals:

> On October 24, 2001, defendant filed a motion to suppress identification testimony: (1) a pre-arrest photographic identification, and (2) a post-arrest photographic identification. The photo-lineups were held in relation to a robbery that occurred at a Kroger grocery store ("grocery store") on January 20, 2001. Defendant contested the identifications on the grounds the police should have conducted a physical lineup and the photo-lineups were unduly suggestive. A hearing was held January 7, 2002, and January 8, 2002.
> Douglas Culbreath was working as a cashier at a Kroger store on January 20, 2001. Culbreath observed defendant (whom he identified at trial) come out of the manager's office and scream. When Culbreath approached Usher, Usher held up a twelve-inch kitchen knife over Culbreath's head and instructed him to get out of the way. Culbreath observed Usher point a knife at another cashier and grab money from her cash register. Culbreath observed Usher walk out of the grocery store.
> Culbreath initially indicated that he first described defendant as a man with Indian features, bloodshot red eyes and a grayish, sticky beard. However, Culbreath first informed the police and testified at the preliminary examination that defendant was clean-shaven. At the preliminary examination and at the evidentiary hearing, defendant appeared in court with facial hair.
> At the evidentiary hearing, Culbreath identified the photo-lineup that he observed on January 20, 2001, after the robbery. Culbreath was presented with a photo-lineup at the grocery store shortly after the robbery. Culbreath identified the person in position number one as the person who robbed the grocery store. The photograph in position number one was a photograph of defendant. Culbreath confirmed that three photographs depicted men with having facial hair. Two men were African-American. Culbreath was able to eliminate the three men that had facial hair before he selected defendant's photograph.
> Don Rudick was the co-manager working at the grocery store on the day of the robbery. Rudick was sitting in the manager's office when defendant stepped

4

inside and pulled out a knife. When defendant entered the manager's office, Rudick was able to see defendant's entire face. In Rudick's initial statement to the police, he described defendant as having facial hair, possibly a mustache and a goatee, but he was uncertain. Rudick initially indicated that he was presented with a photo-lineup one month after the robbery; however, he later indicated that the photo-lineup occurred on the same day that the physical lineup was originally scheduled. Rudick identified the person in position number one as the person who robbed the grocery store. The photograph in position number one was a photograph of defendant.

Originally, Rudick was going to view a physical line-up on January 23, 2001, but it was cancelled because the police could not come up with a suitable line-up. After the physical line-up was cancelled, Rudick was presented with a photo-lineup. An attorney, Alan Cooper, was present when Rudick examined the photo-lineup and identified defendant as the robber. Four of the six photographs had men with facial hair. Rudick examined the pictures for approximately sixty seconds to ninety seconds because he wanted to be certain.

Detective Ronald Genereux prepared the photo-lineup that was presented to Culbreath. Genereux was able to get a picture of defendant after receiving information from another police officer who determined that, based on information from the witnesses regarding the Pontiac, defendant was the registered owner and he matched the general description given by the witnesses. Genereux located defendant's picture in the computer database and included five other pictures in the photo-lineup.

Once Genereux prepared the photo-lineup, he immediately went to the grocery store and located Culbreath. Genereux, without referencing anyone specifically, asked Culbreath if he could pick out an individual in the photo-lineup that was responsible. Culbreath took approximately ten seconds to examine the photographs before he selected defendant's photograph.

At the conclusion of the evidentiary hearing, defendant argued that his motion to suppress should be granted because Culbreath and Rudick had emphasized that the robber was clean-shaven, and yet they were presented with a photo-lineup with men who had facial hair. Defendant also asserted that Culbreath and Rudick did not have an independent basis for their identifications because they were able to observe defendant at the preliminary examination. The trial court denied defendant's motion to suppress because (1) Culbreath and Rudick were each able to select defendant's photograph in line-ups that were approximately one month apart and without any prompting by the police, and (2) defendant's argument concerned the weight and not the admissibility of the identifications.

*Usher*, 2003 WL 23018262, at *1-*2, slip op. at 1-3.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

5

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Identification Claim (Claim I)*

Petitioner first contends that his conviction was based on identifications which resulted from impermissibly suggestive identification procedures. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

　　　　1.      *Clearly Established Law*

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *United States v. Wade*, 388 U.S. 218, 241-42 (1967). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of

certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

2.  *Analysis*

The Court should conclude that petitioner's claim fails on both prongs of this test. Petitioner contends that the photographic line-up in which he was identified by Culbreath and Rudick was impermissibly suggestive because the perpetrator was described by the witnesses as being clean shaven and of Indian descent, yet the six-person photo array included three people with facial hair, and included three African Americans and one Caucasian. *See* Br. in Supp. of Pet., Ex. E. The Michigan Court of Appeals rejected this claim, noting that "a photo-lineup is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus, are sufficient to reasonably test the identification." *Usher*, 2003 WL 23018262, at *3, slip op. at 4. The court reasoned that petitioner's "photograph was not distinctive since he was not the only person depicted as clean-shaven, (2) he was not the only man depicted with Indian features, and (3) it was reasonable to include photographs of men with facial hair and different ethnic

backgrounds because the officer in charge testified that he received varying descriptions of defendant from three witnesses at the grocery store." *Id.* The Court should conclude that this determination was reasonable.

A photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (internal quotation omitted). Here, petitioner's picture did not stand out from all of the other photos in the array. Although all of the photos differed in varying respects, nothing in the composition of the array unmistakably pointed to petitioner as the culprit. Petitioner was not the only one depicted without facial hair, and several other of the individuals in the array had similar facial features to petitioner. Further, the discrepancy between the races of the individuals and their facial hair was necessitated by the varying descriptions that the witnesses had given the police. In these circumstances, the court of appeals's conclusion that the photo array was not impermissibly suggestive was reasonable. *See United States v. Contreras*, No. 92-2236, 1994 WL 198176, at *1 (10th Cir. May 19, 1994); *see also*, *United States v. Galati*, 230 F.3d 254, 259-60 (7th Cir. 2000); *United States v. Hodge*, 77 F. Supp. 2d 674, 680 (D.V.I. 1999).

Further, even assuming that the photographic line-up was impermissible suggestive, the totality of the circumstances rendered Culbreath's and Rudick's identifications reliable. The witnesses both had a good opportunity to look at petitioner for a long period of time in well-lit conditions, *see* Evid. Hr'g Tr., Vol. I, at 12, 21; Vol. II, at 8-11; the line-ups occurred only three months after the robbery, the witnesses were able to identify petitioner in separate line-ups and without any prompting by the police; Culbreath was particularly attentive, identifying the model and

10

licence plate of petitioner's car, *see id*. at 18-19; and identifications were buttressed by Culbreath's identification of petitioner's car and by the identification of petitioner by Cheryl Cordner, *see* Trial Tr., Vol. II, at 107-13; and both Culbreath and Rudick identified petitioner quickly and with certainty. *See* Evid. Hr'g Tr., Vol. I, at 26, 46, 57; Vol. II, at 41, 51, 56. In these circumstances, petitioner cannot show that the admission of Culbreath's and Rudick's identifications was improper, even if the photo array was impermissibly suggestive. *See United States v. Wiseman*, 172 F.3d 1196, 1220-21 (10th Cir. 1999). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Sentencing Claims (Claims II-IV)*

Petitioner's remaining claims raise various challenges to his sentence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Guidelines Scoring/Jail Credit*

In his second claim petitioner contends that the trial court improperly scored his sentencing guidelines, and in fourth claim petitioner contends that the trial court erred in computing the amount of pre-conviction jail time for which he was entitled to receive credit against his prison term. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

As a general matter, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the

court improperly scored the guidelines range raises an issue of state law not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also*, *Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Likewise, petitioner's claim that the trial court erred in computing the credit to which he was entitled for time spent in jail prior to trial raises an issue of state law not cognizable on habeas review. *See Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991); *Lewis v. Cardwell*, 609 F.2d 926, 928 (9th Cir. 1979); *Hoover v. Snyder*, 904 F. Supp. 232, 234 (D. Del. 1995). Accordingly, petitioner is not entitled to habeas relief on these claims.

    2.    *Proportionality*

Petitioner also contends that his sentence was disproportionate to his offense. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole

12

under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991). In *Harmelin*, the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are "grossly" disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005.[3] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the

---

[3]Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three-factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized,

> although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality.

*United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter,

> one could argue without fear of contradiction by any decision of [the Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative.

*Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id.* at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.). Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the

14

capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 31-32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id*. at 33-35 (opinion of Stevens, J.); *id*. at 35-37 (opinion of Breyer, J.).

Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

### b. Analysis

Here, the "threshold comparison" of petitioner's crime and the sentence imposed does not "lead[] to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus petitioner is not entitled to habeas relief on this ground.[4] Petitioner was convicted of an armed robbery in which he wielded a knife and threatened at least two store employees with the knife. In these circumstances, petitioner's sentence of 25-40 years' imprisonment is not grossly disproportionate

---

[4]To the extent that petitioner's claim rests on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), the claim is one of state law which is not cognizable on habeas review. *See Welch*, 49 F. Supp. at 1009.

to his offense. *See, e.g.*, *Little v. Butler*, 848 F.2d 73, 77 (5th Cir. 1988) (25 year sentence for attempted armed robbery not disproportionate); *United States v. Oglesby*, 764 F.2d 1273, 1279 (7th Cir. 1985) (20 year sentence for armed robbery); *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1075 (E.D. Mich. 2000) (Gadola, J.) (20-50 year sentence for armed robbery); *Atkins v. Overton*, 843 F. Supp. 258, 261-62 (E.D. Mich. 1994) (Gadola, J.) (10-30 year sentence for armed robbery). In addition, petitioner was sentenced as an habitual offender, having had a number of prior convictions including several for robbery and armed robbery. *See Rummel*, 445 U.S. at 284-85 (mandatory sentence of life imprisonment under recidivist statute not disproportionate where defendant's three qualifying convictions were all nonviolent theft offenses involving a total of less than $230); *Williams v. Johnson*, 845 F.2d 906, 910 (11th Cir. 1988) (upholding life sentence as an habitual offender for forgery offense).

This conclusion is not altered by petitioner's arguments that the trial court failed to consider his individualized circumstances, or was motivated solely by the desire to punish petitioner and protect society without considering petitioner's rehabilitative potential. Although the Supreme Court has held that individualized sentencing is required in the death penalty context, *see, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), these cases "have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citing *Eddings v. Oklahoma*, 455 U.S. 104, 110-112 (1982); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *Lockett v. Ohio*, 438 U.S. 586, 602-05 (1978); *Woodson*, 428 U.S. at 303-05). Based on these cases, the *Harmelin* Court explicitly declined to extend the individualized sentencing requirement to non-capital cases. *Harmelin*, 501 U.S. at 996

("We have drawn the line or required individualized sentencing at capital cases, and see no basis for extending it further."); *see also*, *id.* at 1006 (Kennedy, J., concurring). Likewise, nothing in the Constitution requires a state to establish its system of criminal sanctions to give primacy to any one penological goal. *See Harmelin*, 501 U.S. at 999 (Kennedy, J.) ("[T]he Eighth Amendment does not mandate adoption of any one penological theory.").

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives  
                                        PAUL J. KOMIVES  
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 3/27/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 27, 2006.
>
>                             s/Eddrey Butts  
>                             Case Manager